MATTER OF AVALOS ZAVALA

In Deportation Proceedings

A-13123424

*Decided by Board March 10, 1965.*

Respondent's misrepresentations as to marital status and the existence of minor children were material under section 212(a)(19), Immigration and Nationality Act, since the facts, including respondent's pending divorce suit, his love for his cousin who also had a visa application pending, and his desire to marry her in the United States, if revealed to the consul, might have resulted in a finding of excludability under section 212(a)(13) of the Act. [*Matter of M—R—*, 9 I. & N. Dec. 602, and *Matter of J—D—D—*, 9 I. & N. Dec. 636, distinguished.]

CHARGES:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry—Visa procured by misrepresentation of material fact.

Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excludable at entry—No valid visa.

The Service appeals from the order of the special inquiry officer terminating proceedings. The appeal will be sustained.

Respondent, a 40-year-old married male, a native and citizen of Peru, was admitted to the United States on March 16, 1962, upon surrender of a non-quota immigrant visa issued to him on January 18, 1962, at Lima, Peru. The Service charges that the respondent obtained his visa by misrepresenting a material fact, when he showed himself to be without wife and children whereas, in fact, he was married and had four minor children.

Respondent married in Peru on May 19, 1950. He did not establish a separate home for his wife; for a time they lived with her parents. They separated sometime before 1955, but had marital relations until that year. There are four minors of the union. About 1959 or 1960, respondent and his cousin Dora Mercado decided they would like to get married. The law did not bar such marriage but respondent was unable to obtain a divorce from his wife because she

196

demanded too much money. Dora made up her mind that she could not continue living in Peru near the respondent while he was not free to marry. She decided to come to the United States; respondent decided he would also come and that he would marry Dora when he was free to do so. On October 3, 1961, the respondent filed an action for divorce against his wife. (As of October 10, 1963, the divorce had not been granted although it appeared to be ready for a decision upon the petition of the interested party.) Both respondent and Dora applied for visas in 1962. Respondent stated he represented himself as being single because it was his intention to marry in the United States and because he thought the court action would solve the situation. Respondent and Dora left Peru by different airports primarily to prevent her parents from knowing that he was going to the United States with her. Upon arrival in the United States they began living together as husband and wife; about 20 days after arrival, upon learning that Dora was pregnant, respondent married her (April 12, 1962). Two children were born of this union.

Respondent alleges that he sends $95.00 a month for the support of his children in Peru; his wife has charged him before Peruvian officials with abandonment. The respondent's actions came to light after his wife had informed the United States Consul at Lima, Peru that respondent had traveled to the United States with a woman and might try to marry her here.

The special inquiry officer held that respondent had made a wilful misrepresentation as to his marital status and the existence of children, but that since the true facts would not have revealed that he was within the excluding provisions of section 212(a) of the Act and since in several decisions, the Board has held that similar misrepresentations had not cut off a line of inquiry relevant to an alien's eligibility, the proceedings should be terminated. The special inquiry officer did not consider it a distinguishing factor that the respondent intended marrying his cousin in the United States.

The Service contends that the information withheld from the consul was material to the issuance of the visa because (1) had the consul known of the respondent's dependents, he would not have issued a visa without having been satisfied that respondent had the ability to support his family — an ability that the respondent was in no position to establish; (2) abandonment of children may involve moral turpitude and since there was the possibility that respondent was abandoning his children, consul could have refused to issue a visa; and (3) had consul known the facts, he would have refused to issue a visa on the groud of one since respondent was coming to the United States for an immoral purpose.

197

Counsel contends that Board precedents in similar situations require a finding that merely leaving behind children who were later supported did not constitute abandonment (*Matter of M–R–*, 9 I. & N. Dec. 602). He contends that since there was neither an abandonment nor prosecution for abandonment before the respondent left there could have been no question of denying respondent a visa because of the possible commission of a crime involving moral turpitude. Counsel contends the record does not establish it was the respondent's purpose to bring his cousin to the United States as a concubine since the record does establish that he intended to marry her as soon as he was legally free to do so — he having already started divorce proceedings to free himself. Counsel contends that in any event, respondent is not charged with having entered the United States for an immoral purpose, and it would have made no difference to his eligibility for the issuance of a visa had the information been known. *Matter of S—B— and C—*, 9 I. & N. Dec. 436, and *Matter of Martinez-Lopez*, Int. Dec. No. 1312, are cited.

To permit a finding that the misrepresentation was not material, the respondent must establish that he was not inadmissible to the United States on the true facts and that his misrepresentation did not cut off an inquiry which might have properly resulted in a denial of the visa (*Matter of S—B— and C—*, supra, at 448-9).

Respondent and his present wife testified in a frank and cooperative manner in their pre-hearing statements. (Counsel refused to permit respondent to testify at the hearing (p. 22).) The respondent had never been arrested in Peru. There is no reason to doubt respondent's testimony that when he left for the United States with his cousin, he did not intend to marry her until his divorce became final.

In deciding whether inquiry might have revealed a ground of inadmissibility, an absolute defence is not presented by showing that the applicant may not have been inadmissible; the important factor is how the case would have appeared to the consul had he been in possession of all the facts at the time application was made. If having been in possession of all the facts, it would have appeared probable to the consul that respondent was inadmissible, then the concealment of those facts was a material matter (*Matter of S—B— and C—*, supra, at 449-50). Certainly, with information that the respondent, a married man with a family, was leaving the family, consul would have questioned respondent about his plans for his family, and could have learned of the respondent's separation from his wife, the pendency of the divorce suit and failure to prosecute it, respondent's love for his cousin who too had her visa application

pending and his desire to marry her in the United States. Consul could then well have refused to issue a visa on the ground that there was reason to believe that the respondent was coming to the United States for an immoral purpose; *i.e.*, to enter into a relationship which amounted to concubinage (section 212(a)(13) of the Act; *Hansen v. Haff*, 291 U.S. 559 (1934)).

*Matter of M—R—*, 9 I. & N. Dec. 602, relied upon by the special inquiry officer and counsel concerned a widow with three children who applied for a visa in her maiden name concealing the fact that she had been married and that she had children; it is distinguishable because the element of entering for an immoral purpose was absent.

*Matter of S—B— and C—*, *supra*, referred to generally by counsel is consistent with the position we take. In *Matter of Martinez-Lopez*, Int. Dec. No. 1312, cited by the special inquiry officer and counsel, concerned an alien who in applying for a visa had furnished a forged offer of employment. The misrepresentation was found not material because nothing an investigation could have brought to light would have revealed the possible ground of inadmissibility; in the instant case, a possible ground could well have been revealed.

In *Matter of J—D—D—*, 9 I. & N. Dec. 636, relied upon by the special inquiry officer and counsel, the alien indicated she was single when in fact she was married and had two children. She was separated from her husband at the time she made application. There was no showing that inquiry based upon the true facts would have revealed a possible ground of inadmissibility. There was nothing to show she was coming to the United States to live with anyone.

We find that respondent has failed to bear his burden of establishing that his misrepresentation was not material; the charges must be sustained.

The respondent having failed to establish that his extramarital relations do not constitute adultery appears ineligible for voluntary departure. His deportation must be ordered.

ORDER: It is ordered that the appeal of the Service be and the same is hereby sustained.

It is further ordered that respondent be deported from the United States to Venezuela on the charge contained in the order to show cause.

It is further ordered that if the aforenamed country advises the Attorney General that it is unwilling to accept the respondent into its territory or fails to advise the Attorney General within three months following original inquiry whether it will or will not accept the respondent into its territory, respondent shall be deported to Peru.